1

2

3

4

5

6

7        **IN THE UNITED STATES DISTRICT COURT FOR THE**

8        **EASTERN DISTRICT OF CALIFORNIA**

9

10    **MERRILL OXFORD,**                    )        **CIV F 05-1140 AWI LJO**
                                                       )
11                        **Plaintiff,**        )        **ORDER ON DEFENDANT'S**
            **v.**                              )        **MOTION FOR SUMMARY**
12                                              )        **JUDGMENT**
      **SARA LEE BAKING GROUP, INC.,**    )
13                                              )
                          **Defendant.**        )
14    _____)

15

16

17        Plaintiff Merrill Oxford ("Oxford") filed suit against his former employer, Defendant

18    Sara Lee Baking Group, Inc. ("Sara Lee").  Oxford's complaint was originally filed in state court,

19    but was removed to this Court on the basis of federal question jurisdiction.  In his complaint,

20    Oxford alleges claims for: (1) wrongful termination under the Age Discrimination in

21    Employment Act, 29 U.S.C. § 621 et. seq., ("ADEA"), and the California Fair Employment and

22    Housing Act, California Government Code § 1200 et. seq., ("FEHA"); (2) termination in

23    violation of public police under California Government Code § 12920; (3) breach of employment

24    contract; (4) breach of the duty of good faith and fair dealing; (5) fraud and deceit; (6) promise

25    without intent to perform; (7) concealment; and (8) negligent misrepresentation.  Sara Lee has

26    filed a motion for summary judgment on all claims.  Oxford has filed no opposition or response.

27    Because Sara Lee's motion has shifted the burden to Oxford and Oxford has submitted no

28    evidence or created any genuine disputed material facts, Sara Lee's motion will be granted.

1          **SUBMITTED UNDISPUTED BACKGROUND**[1]

2          Oxford is 61 years old and began working for Rainbow Bakery in 1964 as a route delivery

3    salesman.  DUMF No. 1.  His immediate supervisor was Route Sales Supervisor Larry Best.  Id.

4    Best reported to Harold Irby who was the Interim Manager of the Sales Division.  Id.  Irby

5    reported to Chris Castro, the General Sales Manager.  Id.  Prior to Oxford's early retirement in

6    July 2003, the company was bought by Earth Grains, which was then bought by Sara Lee.  Id.

7          The complaint does not contain any allegation that Oxford exhausted the administrative

8    remedies provided by the FEHA or the EEOC.  DUMF No. 2.

9          In the complaint, Oxford identifies six specific instances that created a hostile work

10   environment or constituted discrimination based on his age (40 +) and that led to his constructive

11   discharge.  Those instances are: (1) around January 1998, Oxford was falsely accused of sexual

12   harassment; (2) in March 2002, Oxford was verbally abused by one of his supervisors; (3) in

13   April 2002, Oxford was falsely accused of sexual harassment; (4) Oxford was publically

14   humiliated by one of his supervisors; (5) Oxford was compared to other less reputable salesmen;

15   and (6) Oxford's delivery truck was taken away and was replaced with a smaller truck that had

16   not been cleaned and was filthy.  Plaintiff's Complaint at ¶ 13.  The incidents referred to in

17   paragraph 13 of the Complaint were not motivated by plaintiffs age and plaintiff was not

18   disabled.  DUMF No. 10.

19         The January 1998 sexual harassment incident involved a complaint by an employee

20   named Rozalind Taylor.  See DUMF No. 3; Ratliff Declaration Exhibit A5.  Sara Lee determined

21   that the alleged harassment did not occur and told Oxford that they "appreciated the great job"

22   that he was doing for them.  Ratliff Declaration Exhibit A3.  Any communication between

23   Oxford, Irby, and Best regarding Rozalind Taylor's January 1998 accusation of sexual

24   harassment were isolated, trivial and not motivated by age or disability.  DUMF No. 3.

25   _____

26         [1]Because Oxford has filed no opposition to the motion for summary judgment, no separate statement of
     undisputed facts, and no opposition to Sara Lee's proposed undisputed facts, the factual background comes from
27   Sara Lee's Undisputed Material Facts (DUMF) and the evidence submitted in support of the DUMF's.

28                                    2

1   The March 2002 verbal abuse incident involved punching a time card and overtime.  See

2   Oxford Deposition at 80:7-85:14.  Specifically, Best told Oxford words to the effect that Oxford

3   was to stay away from the time clock and that Best would punch Oxford's card.  See id.  Oxford

4   reported the incident to Chris Castro who conducted a meeting on the subject.  See id.  Best

5   admitted telling Oxford not to punch his card, and Castro reacted very negatively to Best's

6   admission.  See id.  Castro then discussed Sara Lee's rules and reiterated that employees were to

7   punch their own time cards.  See id.  The March 2002 time clock incident was isolated, trivial

8   and not motivated by age or disability.  DUMF No. 4.

9   Oxford was never accused of sexual harassment in April 2002.  See DUMF No. 5; Ratliff

10   Declaration Exhibit A-1 at p. 136:6-11.

11   The public humiliation referenced in the fourth subsection of Paragraph 13 in the

12   complaint appears to deal with three incidents.  The first occurred between 2000 and 2003 where

13   Harold Irby drove behind Oxford, blinked and honked at Oxford to stop the delivery truck, and

14   Oxford pulled to the side and got out of his truck.  See Oxford Deposition at 92:19-93:9, 98:8-16.

15   Irby then yelled and screamed at Oxord in public, "Liberty School called.  Why haven't you been

16   there? , , , I have a meeting with someone.  Why the hell haven't you been by there?"  Id.  The

17   second incident occurred between 2002 and 2003 at a sales meeting involving Sara Lee's

18   delivery drivers.  See id. at 95:3-96:25, 97:6-21.  A supervisor was talking and Oxford was

19   asking the supervisor a question.  See id.  Irby then yelled from his office 15 feet away, "Oxford,

20   shut your fucking mouth.  No one can hear [the supervisor] talk."  See id.  The third incident

21   occurred between 1998 and 2003 at a "sales room checking in."  See id. at 98:23-99:25.  In front

22   of other employees, Irby stuck up two fingers and said, "Oxford, I found two out of code bread in

23   Food 4 Less today."  Id.  The public humiliation or embarrassment experienced by Oxford from

24   these incidents were isolated, trivial, and not motivated by age or disability.[2]  DUMF No. 6.

25

26   [2]Also, sometime between 2000 and 2003, Irby told Oxford that Irby said that he and Best may stop by and
see Oxford's wife.  See Oxford Deposition at 67:12-21; 102:19-103:9.  The insinuation was apparent and offensive
27   to Oxford.  See id.  Irby apparently made similar comments to at least one other employee.  See id. at 67:22-25.

28                                                           3

1    The alleged comparison between Oxford with less reputable salesmen occurred at Cost

2 Less Groceries shortly before Oxford's retirement in 2003.  See Oxford Deposition at 43:16-

3 45:20; Defendant's Motion at 10:18-19.  Irby was present at the grocery store and found bread

4 that had been placed by the wrong signs.  See id.  Irby warned that the grocery manager could get

5 in trouble, and then proceeded to place bread on the racks himself.  See id.  Oxford saw that Irby

6 placed bread under the wrong sign and reiterated Irby's own warning back to Irby.  See id.  In

7 front of the grocery manager, Irby then described Oxford as being delivery driver Kurtz.  See id.

8 Kurtz was apparently known as the worst delivery driver and had a very poor reputation with that

9 grocery manager.  See id.  The comparison with the less reputable salesman was isolated, trivial,

10 and not motivated by age or disability.  DUMF No. 7.

11    The older delivery truck incident occurred sometime between 1998 and 2003.  See

12 Oxford Deposition at 48:3-49:25.  Oxford had cleaned his truck and showed Irby the results.  See

13 id.  Irby criticized Oxford's parking of the truck and did not comment on the cleanliness of the

14 vehicle.  See id.  Several days later, Oxford was assigned an older truck that had not been cleaned

15 and had dirt inside, dirt on the outside, and spilled soda on the dashboard.  See id.  The

16 replacement delivery truck incident was isolated, trivial, and not motivated by age or disability.

17 See DUMF No. 8.

18    No one at Sara Lee did anything to prevent Oxford from performing his duties or to

19 reduce his earnings, hours or benefits, and Oxford always had the same job functions.  DUMF

20 No. 11.  No one lied or misrepresented anything to Oxford.  Id.  Oxford was not disciplined

21 during the times alleged in the complaint.  Id.  The terms and conditions of Oxford's employment

22 were not affected by the alleged conduct of Irby or Best.  Id.  Other than the 1998 claim of

23 harassment by Ms. Taylor, no one else complained about Oxford's conduct at Sara Lee.  Id.  No

24 one at Sara Lee tried to prevent Oxford from receiving the benefits he was entitled to after he

25 retired.  DUMF No. 12.  Other than the March 2002 time clock incident, Oxford is not aware of

26 anything done by Sara Lee which amounted to a violation of the contract.  DUMF No. 13.

27    Oxford had neither problems with nor criticisms of, the Sales Manager, Chris Castro, and

28                                                    4

1    Oxford believed that Castro was an honest person.  DUMF No. 14.  Whenever Oxford reported a

2    problem, Castro would meet with Oxford and try to resolve Oxford's concerns.  Id.  Prior to

3    Oxford's retirement, Castro asked Oxford not to retire.  DUMF No. 15.

4          No discovery has been conducted by Oxford and no experts have been designated.

5    DUMF No. 16.

6    _____          **SUMMARY JUDGMENT STANDARD**

7          Summary judgment is appropriate when it is demonstrated that there exists no genuine

8    issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

9    Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

10   American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004); Jung v. FMC Corp., 755

11   F.2d 708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to

12   undisputed facts, it is a mixed question of law and fact.  See Sousa v.Unilab Corp. Class II (Non-

13   Exempt) Members Group Benefit Plan, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002).  Where the

14   case turns on a mixed question of law and fact and the only dispute relates to the legal

15   significance of the undisputed facts, the controversy for trial collapses into a question of law that

16   is appropriate for disposition on summary judgment.  See Union Sch. Dist. v. Smith, 15 F.3d

17   1519, 1523 (9th Cir. 1994); Sousa, 252 F.Supp.2d at 1049.

18          Under summary judgment practice, the moving party always bears the initial
             responsibility of informing the district court of the basis for its motion, and
19          identifying those portions of "the pleadings, depositions, answers to
             interrogatories, and admissions on file, together with the affidavits, if any," which
20          it believes demonstrate the absence of a genuine issue of material fact.

21   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

22   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

23   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

24   file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

25   upon motion, against a party who fails to make a showing sufficient to establish the existence of

26   an element essential to that party's case, and on which that party will bear the burden of proof at

27   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

28                                                   5

1  nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a

2  circumstance, summary judgment should be granted, "so long as whatever is before the district

3  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

4  satisfied." Id. at 323.

5        If a moving party fails to carry its burden of production, then "the non-moving party has

6  no obligation to produce anything, even if the non-moving party would have the ultimate burden

7  of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th

8  Cir. 2000).  If the moving party meets it initial burden, the burden then shifts to the opposing

9  party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec.

10  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins., 210 F.3d

11  at 1103; Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles,

12  607 F.2d 1276, 1280 (9th Cir. 1979).  A fact is "material" if it might affect the outcome of the

13  suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986);

14  Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir.

15  2002).  A "genuine issue of material fact" arises when the evidence is such that a reasonable jury

16  could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248-49; Thrifty Oil,

17  322 F.3d at 1046.

18        In attempting to establish the existence of a factual dispute, the opposing party may not

19  rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of

20  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

21  contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank,

22  391 U.S. at 289; Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 682 (9th Cir. 2001).  However,

23  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

24  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

25  parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Hopper v. City

26  of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001).  Thus, the "purpose of summary judgment is to

27  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

28                                                    6

1  trial.'"  Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 650 F.2d 129, 132 (9th

2  Cir. 1982).

3         In resolving a summary judgment motion, the court examines the pleadings, depositions,

4  answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Rule

5  56(c); Fortyune, 364 F.3d at 1079-80.  The court has the discretion in appropriate circumstances

6  to consider materials that are not properly brought to its attention, but the court is not required to

7  examine the entire file for evidence establishing a genuine issue of material fact where the

8  evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas

9  Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified

10  Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The evidence of the opposing party is to be

11  believed, and all reasonable inferences that may be drawn from the facts placed before the court

12  must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475

13  U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless,

14  inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

15  factual predicate from which the inference may be drawn.  See Mayweathers v. Terhune, 328

16  F.Supp.2d 1086, 1092-93 (E.D. Cal. 2004); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d

17  993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply

18  because a litigant claims that one exist or promises to produce admissible evidence at trial."  Del

19  Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see also Bryant v. Adventist

20  Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

21         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22  show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken

23  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

24  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  If the nonmoving party

25  fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is

26  entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

27

28                                               7

1

**DEFENDANT'S MOTION**

2    **1.      FIRST CAUSE OF ACTION – Wrongful or Constructive Discharge Under the**
**ADEA and FEHA**

3

4            Prior to filing suit under either the ADEA or FEHA, a plaintiff must exhaust

5    administrative remedies and file a complaint with the Equal Employment Opportunity

6    Commission ("EEOC") for claims under the ADEA or file a complaint with the Department of

7    Fair Employment and Housing ("DFEH") for claims under FEHA.  See Legnani v. Alitalia Linee

Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001); Sanchez v. Pacific Powder Co., 147

8    F.3d 1097, 1099 (9th Cir. 1998); Albano v. Schering-Plough Corp., 912 F.2d 384, 386 (9th Cir.

9    1990); Morgan v. Regents of the University of California, 88 Cal.App.4th 52, 63 (2000); Balloon

10   v. Superior Court, 39 Cal.App.4th 1116, 1120 (1995).  Defendants have raised the issue of

11   Oxford's compliance with the ADEA and FEHA exhaustion of administrative remedies

12   requirements.  See Ratliff Declaration at ¶ 2.  However, Oxford has not responded and there is no

13   indication that he filed claims with the EEOC or DFEH.  Because Oxford has not shown that he

14   exhausted administrative remedies, summary judgment on this cause of action is granted.

15

16
     **2.      SECOND CAUSE OF ACTION - Constructive Discharge In Violation of Public**
17                                           **Policy**

18           Oxford relies on California Government Code § 12920 and alleges that he was harassed,

19   discriminated and retaliated against by Sara Lee on the basis of age, and that Sara Lee failed to

20   take action to prevent the harassment.  Sara Lee argues that this cause of action, although not

21   labeled as such, is one for constructive discharge in violation of public policy because the

22   complaint focuses on the allegedly forced retirement or "discharge" of Oxford in July 2003.

23   Given the lack of opposition, the Court accepts Sara Lee's interpretation of the cause of action.

24           "Constructive discharge occurs only when the employer coerces the employee's

25   resignation, either by creating working conditions that are intolerable under an objective

26   standard, or by failing to remedy objectively intolerable working conditions that actually are

27   known to the employer."  Mullins v. Rockwell Int'l. Corp., 15 Cal. 4th 731, 737 (1997).

28

> The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.  An employee may not be unreasonably sensitive to his [or her] working environment . . . . Every job has its frustrations, challenges, and disappointments; these inhere in the nature of work. An employee is protected from . . . unreasonably harsh conditions, in excess of those faced by his [or her] co-workers. He [or she] is not, however, guaranteed a working environment free of stress.

 Turner v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1246-47 (1994).  Thus, reductions in pay, or criticisms of work performance, as well as single, isolated and trivial acts of misconduct, or demotions are generally insufficient to support a claim for constructive discharge.  See id.; Casenas v. Fujisawa USA, Inc., 58 Cal.App.4th 101, 1116-17 (1997); Cloud v. Casey, 76 Cal.App.4th 895, 902-03 (1999); Gibson v. Aro Corp., 32 Cal.App.4th 1628, 1636-37 (1995).  "An actual or constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee," and "to sustain a claim of wrongful discharge in violation of fundamental public policy, [the plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." Turner, 7 Cal.4th at 1252, 1256; see also Colores v. Board of Trustees, 105 Cal.App.4th 1293, 1306-07 (2003).  The public policy against age discrimination in FEHA may support a common law tort claim for wrongful discharge in violation of public policy. Stevenson v. Superior Court, 16 Cal.4th 880, 897 (1997).

As applied in this case, the evidence presented fails to show such an objectively egregious work environment that a reasonable person in Oxford's position would feel compelled to quit. The evidence at most shows isolated, intermittent criticisms of Oxford's work performance by a manager. Cf. Turner, 7 Cal.4th at 1246-47; Casenas, 58 Cal.App.4th at 1116-17; Gibson, 32 Cal.App.4th 1628, 1636-37.  The 1998 sexual harassment claim was resolved in Oxford's favor, there was no 2002 allegation of sexual harassment, it appears that Oxford's use of the small, "dirty" delivery truck was an isolated occurrence, and the approximately four instances of public humiliation (comparison with Kurtz, Liberty School delivery, asking a question, and the out of

9

1   code bread) all deal with criticisms of Oxford's job performance and appear to have spanned a

2   five year period.  Moreover, there is no evidence that any of the criticisms or events identified in

3   the complaint occurred because of, or on the basis of, Oxford's age.  None of the criticisms

4   reference age and Oxford himself testified that he did not believe that harassment was due to age.

5   See Oxford Deposition at 131:24-132:17.  Because the evidence presented does not indicate

6   improper conduct motivated by Oxford's age, and because the evidence presented does not show

7   sufficiently extraordinary or egregious conditions that could support a finding of constructive

8   discharge, summary judgment on this claim is granted.

9

10   **3.      FOURTH CAUSE OF ACTION – Breach of Contract[3]**

11          Oxford alleges in his complaint that there existed an implied in fact contract between

12   himself and Sara Lee.  This implied contract allegedly included the following terms: (1) Oxford

13   would be treated fairly, equitably, impartially, without harassment or discrimination or

14   retaliation, and in compliance with Sara Lee's policies and procedures; (2) Sara Lee would base

15   all employment decisions so as to further the principles of equal employment opportunity,

16   including equal treatment based on age; (3) all personnel actions would be administered without

17   regard to age; (4) Sara Lee would provide a work environment free of age and disability

18   harassment; (5) Sara Lee would provide a work environment free of age discrimination; (6)

19   Oxford could work in an environment free of harassment and discrimination based on age; (7)

20   Sara Lee would promptly and thoroughly investigate all charges of discrimination and

21   harassment; (8) Sara Lee would take effective action to prevent harassment and discrimination;

22   (9) Oxford could continue his employment indefinitely as long as he performed satisfactorily;

23   (10) as long as Oxford performed satisfactorily, his employment would not end and his job duties

24   would not be reassigned except for good cause; (11) Sara Lee would not evaluate Oxford's work

25   in an arbitrary or capricious manner (12) Sara Lee would not take actions to prevent Oxford from

26

27          [3]Oxford's complaint contains a numbering error.  There are a total of eight causes of action pled, but there
     is no third cause of action.

28                                                    10

1  performing his duties; and (13) if Oxford was involuntarily terminated, Sara Lee would not

2  unreasonably attempt to prevent Oxford from receiving benefits.  See Complaint at ¶ 28.

3       Sara Lee moves for summary judgment on the basis that there is no evidence that any of

4  these implied conditions were ever breached.  Sara Lee is correct.  During the relevant time

5  period as alleged in the complaint, 1998 to 2003, the evidence indicates that Oxford's pay,

6  benefits, and vacation were not decreased, his hours worked and the overall conditions and terms

7  of employment did not change, he maintained the same position, he maintained the same job

8  functions and no one prevented him from doing his job, no one lied or misrepresented anything

9  to Oxford during his employment, Oxford was never written up regarding any incidents

10  involving Irby or Best, there is no evidence that Oxford was disciplined, Oxford was asked not to

11  retire, and no one prevented Oxford from obtaining benefits.[4]  See DUMF Nos. 11-15.  Further,

12  as discussed above, there is no evidence that any harassment based on age occurred, and Oxford

13  was not constructively discharged.  At the summary judgment stage, where the moving party has

14  met its initial burden, the opposing party may not rely upon the mere allegations or denials of its

15  pleadings, but instead is required to tender evidence of specific facts in the form of affidavits,

16  and/or admissible discovery material, in support of its contention that a dispute exists.  Willis,

17  244 F.3d at 682.  Because Oxford has not presented evidence that indicates a breach of an

18  implied contract, summary judgment on this claim is granted.

19

20  **5.       FIFTH CAUSE OF ACTION – Breach of the Covenant of Good Faith & Fair**
   **Dealing**

21
22       The complaint relies on the implied employment contract discussed in the Fourth Cause

23  _____

24       [4]Although Oxford appears to have testified that the March 2002 time clock incident may have violated his
   contract (not all of the pages supporting DUMF No. 13 have been provided), Oxford has presented no evidence that
25  the March 2002 clock incident actually constitutes a breach of contract. There is no evidence that Oxford lost pay,
   that Oxford was prevented further from punching his own time card after the meeting with Castro, or that shows how
26  many (if any) days Oxford was unable to punch his own time card.  In fact, the incident appears to have been
   properly resolved internally through the meeting with Castro, which apparently occurred within two days of Castro
27  receiving the complaint.  See Ratliff Declaration Exhibit A4.  The isolated March 2002 time clock incident, which
   was successfully resolved internally, does not appear to constitute a breach of contract.

28                                              11

1  of Action as the basis for this claim.  See Complaint at ¶ 36.  Sara Lee moves for summary

2  judgment on the basis that there was no breach of a contract and that there is no evidence that the

3  conduct relied upon was a breach or ever even occurred.

4       Sara Lee is correct.  Assuming that there was an implied employment contract, there is no

5  evidence that Sara Lee breached the terms of that contract.  Because there is no breach of the

6  implied employment contract, there is no breach of the covenant of good faith and fair dealing.

7  See MDTV Med. News, Inc. v. Weinstock, 2007 U.S. Dist. LEXIS 8806, *14-*15 (N.D. Cal.

8  2007); Guz v. Bechtel Nat. Inc., 24 Ca1.4th 317, 349-50 (2000); Flait v. North Am. Watch Corp.,

9  3 Cal.App.4th 467, 481 (1992); Los Angeles Equestrian Center, Inc. v. City of Los Angeles, 17

10  Cal.App.4th 432, 447 (1993); cf. Shaw v. Hughes Aircraft Co., 83 Cal.App.4th 1336, 1344

11  (2000) (requiring a new trial where jury findings of breach of good faith covenant but no breach

12  of employment contract were inconsistent).  Summary judgment on this claim is granted.

13

14  **6.       SIXTH CAUSE OF ACTION – Fraud & Deceit/Intentional Misrepresentation**

15       The complaint alleges that Sara Lee fraudulently represented that it would: (1) provide

16  Oxford, as a disabled employee over 40, with an environment free of discrimination; (2)

17  effectively address and remedy any of Oxford's employment complaints and concerns in a

18  prompt manner and that he would feel comfortable raising concerns or complaints to

19  management; (3) judge Oxford solely based on merit and work performance; and (4) provide

20  Oxford with secure employment as long as he performed his duties.  See Complaint at ¶ 41.

21       "The elements of fraud, which give rise to the tort action for deceit, are (a)

22  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

23  (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

24  resulting damage."  Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).  As in the previous

25  causes of action, Oxford has presented no evidence supporting this claim, and the evidence

26  presented does not indicate that any misrepresentations occurred.  See DUMF No. 11.  The

27  evidence does not show a hostile work environment or discrimination based on age, does not

28                                                    12

1    show that Oxford's complaints were ignored, does not show that Oxford could not bring

2    concerns to management, does not show that Oxford was improperly evaluated, and does not

3    show that his employment was insecure.  See DUMF Nos. 11, 14-15.  Because Oxford has

4    provided no evidence of misrepresentations, summary judgment on this claim is granted.

5

6    **7.        SEVENTH CAUSE OF ACTION – Promise Without Intent to Perform**

7            The allegations for this cause of action rely on the four "misrepresentations" outlined in

8    the Sixth Cause of Action.  See Complaint at ¶ 49 (expressly relying on the representations

9    "outlined in Paragraph 41").  The complaint alleges in part that these promises were made to

10   induce Oxford into accepting Sara Lee's offer of employment when in fact Sara Lee had no

11   intention of performing these promises.

12           A fraudulent deceit may be "a promise, made without intention of performing it."  Cal.

13   Civ. Code § 1710(4).  Through Civil Code § 1710(4), "certain broken promises of future conduct

14   may be actionable."  Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th 153, 158 (1991).

15   "To maintain an action for deceit based on a false promise, one must specifically allege and

16   prove, among other things, that the promisor did not intend to perform at the time he or she made

17   the promise and that it was intended to deceive or induce the promisee to do or not do a

18   particular thing."  Building Permit Consultants, Inc. v. Mazur, 122 Cal.App.4th 1400, 1414

19   (2004); Tarmann, 2 Cal.App.4th at 159.  "The mere failure to perform a promise made in good

20   faith does not constitute fraud."  Building Permit, 122 Cal.App.4th at 1414.

21           As in the previous claims, there is no indication that Sara Lee broke any promises.  The

22   evidence does not indicate constructive discharge, does not indicate age discrimination, does not

23   indicate improper evaluation of Oxford, does not indicate a hostility to complaints by Oxford,

24   and does not indicate insecure employment.  See DUMF Nos. 11, 14-15.  In other words, to the

25   extent that Sara Lee made the alleged promises to Oxford, those promises were performed for

26   years by Sara Lee.  Because there is no evidence of a broken promise, nor conduct that could

27   support an inference of a lack of intent to perform a promise, summary judgment is granted.

28                                          13

1    **8.      EIGHTH CAUSE OF ACTION – Concealment**

2           The allegations for this cause of action rely on conduct that was allegedly contrary to the

3    four identified representations outlined in the Sixth Cause of Action.  See Complaint at ¶ 58

4    (expressly relying on the representations "set forth in Paragraph 41" and the facts "set forth in

5    Paragraph 42"[5]).  The complaint alleges in part that the true facts regarding working conditions at

6    Sarah Lee were concealed and that the concealment was intended to induce Oxford to accept

7    Sara Lee's offer of employment.

8           Fraudulent concealment is "the suppression of a fact, by one who is bound to disclose it,

9    or who gives information of other facts which are likely to mislead for want of communication of

10   that fact."  Cal. Civ. Code § 1710(3); Williams v. Wraxall, 33 Cal.App.4th 120, 132 (1995).

11   "The elements of an action for fraud and deceit based on a concealment are: (1) the defendant

12   must have concealed or suppressed a material fact, (2) the defendant must have been under a duty

13   to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or

14   suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

15   unaware of the fact and would not have acted as he did if he had known of the concealed or

16   suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff

17   must have sustained damage."  Roddenberry v. Roddenberry, 44 Cal.App.4th 634, 665-66

18   (1996); Williams, 33 Cal.App.4th at 132.

19          Here, again like the claims before it, there is insufficient evidence to suggest concealment

20   or suppression of a fact or the intent to conceal.  The evidence presented indicates years of

21   employment with Sarah Lee, no age discrimination, the ability of Oxford to voice his complaints,

22   no constructive discharge, and a request by management that he not retire.  Stated differently, no

23   evidence has been presented that indicates fraudulent conduct by Sara Lee.  Accordingly,

24   summary judgment on this claim is granted.

25

26   _____

27          [5]Paragraph 42 alleges that Sara Lee's actual conduct was contrary to the 4 identified promises of Paragraph
     41.  See Complaint at ¶ 42.

28                                                           14

**9.      NINTH CAUSE OF ACTION – Negligent Misrepresentation**

The allegations for this cause of action are based upon the four misrepresentations outlined in the Sixth Cause of Action.  See Complaint at ¶ 67 (expressly relying on the representations "outlined in Paragraph 41").  The complaint alleges in part that these representations were made without any reasonable ground for believing them to be true and were made to induce Oxford into accepting Sara Lee's offer of employment.

Negligent misrepresentation encompasses "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," Cal. Civ. Code § 1710(2), or "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."  Cal. Civ. Code § 1572(2); Oakland Raiders v. Oakland-Alameda County Coliseum, Inc., 144 Cal.App.4th 1175, 1184 (2006).  The elements of negligent misrepresentation are: "(1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief, (2) made with the intent to induce reliance, (3) reasonable reliance on the statement, and (4) damages."  Century Surety Co. v. Crosby Insurance, Inc., 124 Cal.App.4th 116, 129 (2004).

Here, there were no lies or misrepresentations made to Oxford.  See DUMF No. 11.  Oxford has presented no evidence to show that he was discriminated upon based on age, that he could not make complaints, that he was improperly evaluated, or that he was constructively discharged.  Because Oxford has presented no evidence of misrepresentations, either negligent or intentional, summary judgment on this claim is granted.

**CONCLUSION**

Sara Lee has moved for summary judgment on all of Oxford's causes of action.  Sara Lee has supported its motion with evidence, but Oxford has filed no reply or opposition of any kind.  In fact, Sara Lee's evidence shows that Oxford has not conducted discovery in this case.  Sara Lee's motion is supported by sufficient evidence to shift the burden to Oxford to produce contrary evidence.  It is not enough for Oxford to rely on his complaint at this point, and the

15

1 failure to produce contrary evidence results in judgment for Sara Lee.  Sara Lee's evidence and

2 arguments indicate that Oxford:  did not exhaust his administrative remedies, was not

3 discriminated against on the basis of age, was not constructively discharged, was not discharged

4 in violation of public policy, did not have an implied employment contract breached, did not

5 suffer a breach of the covenant of good faith and fair dealing, and was not the victim of

6 intentional fraud (either deceit or promise without intent to perform), concealment, or negligent

7 misrepresentation.  Because no contrary evidence or opposition of any kind has been presented,

8 summary judgment in favor of Sarah Lee on all causes of action is appropriate.

9

10         Accordingly, IT IS HEREBY ORDERED that:

11 1.      Defendant's motion for summary judgment is GRANTED; and

12 2.      The clerk is ordered to enter judgment in this case in favor of Defendant and against

13         Plaintiff.

14

15 IT IS SO ORDERED.

16 **Dated:     March 13, 2007**                              **/s/ Anthony W. Ishii**
   0m8i78                                              UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28                                          16